AO 91 (Rev. 01/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 12-MJ-7231 |
| Lloyd B. Lockwood | ) | |
| | ) | |
| *Defendant* | | |

FILED
SEP 10 2012
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of  03/30/2011  in the county of   Macon   in the   Central   District of   Illinois  , the defendant violated   26   U. S. C. §  5861(d)  , an offense described as follows:

Possession of an unregistered destructive devices; and violated 18 U.S.C. 922(g)(1), an offense described as being a felon in possession of a firearm (pipe bomb).

This criminal complaint is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

s/Adam M. Coffman

*Complainant's signature*

Adam M. Coffman, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

s/ David G. Bernthal

Date: September 10, 2012

*Judge's signature*

City and state:    Urbana IL

David G. Bernthal, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Adam M. Coffman, being first duly sworn, hereby depose and state as follows:

1. I am a special agent with the Federal Bureau of Investigation (FBI) and have been so employed since August, 2010. I am currently assigned to the Springfield, Illinois office, Decatur Resident Agency. I am presently assigned to work domestic terrorism violations. During my training at the FBI Academy, Quantico, Virginia, I received extensive training in a variety of investigation and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause.

2. This affidavit is made in support of and application for an arrest warrant of Lloyd B. Lockwood for possession of an unregistered destructive device, in violation of 26 U.S.C. § 5861(d), and possession of a firearm (pipe bomb) after a felony conviction, in violation of 18 U.S.C. § 922(g)(1)

3. The information set forth in this affidavit was obtained during the course of my employment with the FBI, through personal observations, the statement of witnesses, information supplied by other local and federal law enforcement officers, and through other investigative activity. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4. On March 30, 2011 at 6:26 a.m. Decatur Police Department dispatched officers to a residence on _____, Decatur, Illinois in response to an anonymous

911 call. The anonymous male caller had stated: "at                    , the guy's name is Bobby, he drive a black truck, the motherfucker talking about blowing his job up today, and he got the bomb." The anonymous call was made from a pay phone at a Circle K Convenience Store in Decatur, Illinois.

    5.    At the Ferris Drive residence, officers spoke to Robert Grider, owner of the residence, who consented to a search of his property. Officers found no evidence suggesting Mr. Grider built or possessed an explosive device. Mr. Grider indicated that he had no intention of blowing up his place of employment and had not constructed a bomb. Mr. Grider did indicate that he was having a dispute with his sister regarding his mother's estate.

    6.    Later that day, at approximately 7:48 p.m., officers were once again dispatched to the Ferris Drive because of a suspicious package found in the homeowner's mailbox. Upon arrival, officers spoke with Melinda Grider, (Robert Grider's wife), who stated that she found an item in her mailbox, surrounded by padding and a "Walmart" type plastic bag. The University of Illinois/Champaign Police Department Bomb Squad responded to the site and determined that the item was a pipe bomb with explosive capabilities and neutralized the bomb. The pipe bomb components were sent to the US Department of Justice Bureau of Alcohol, Tobacco, Firearms and Explosives Forensic Science Laboratory (ATF laboratory) for examination. Once the ATF laboratory's examination was completed the components were sent to Michael Eggleston, Explosives Enforcement Officer (EEO) with the ATF Explosives

Technology Branch for an opinion. EEO Eggleston's opinion is that the submitted components are consistent with a destructive device as defined in 26 U.S.C. § 5845(f). The end caps of the pipe bomb were manufactured in China, and therefore, travelled in interstate commerce. The examination found no fingerprints.

7. The next day ATF Special Agent Thomas Dart interviewed Robert Grider. Mr. Grider told SA Dart that he thought his sister, Linda "Suzy" Curtis, may have put the pipe bomb in his mailbox. According to Mr. Grider, he and his sister had an ongoing dispute regarding their mother and her finances. Mr. Grider was seeking an order of protection to keep his sister away from their mother and a court hearing was scheduled for the date of this interview, March 31, 2011.

8. On April 1, 2011, SA Dart and a Macon County Sheriff's Detective interviewed Linda Curtis at her residence in Bloomington, Illinois. Curtis denied any involvement in the pipe bomb incident at her brother's residence. Curtis stated that on March 30, 2011, she was not in Decatur because she had to work. Curtis stated she was an employee of the Transportation Safety Administration (TSA) at the Bloomington Airport. Curtis stated she was in Decatur on March 31, 2011, for a court hearing. Curtis provided SA Dart her cellular phone number of              (the Curtis phone number).

9. Phone records were obtained for the Curtis phone number. Investigators determined that the Curtis phone number was in contact with phone number              at 6:28 a.m. on March 30, 2011 (the anonymous 911 call was placed at

approximately 6:26 a.m.). Throughout the day on March 30, 2011, the Curtis phone number had been in contact with                multiple times. Further, immediately following SA Dart's interview of Curtis on April 1, 2011, the Curtis phone number called            twice.

10. Through an analysis of the phone records and cellular tower information for            , investigators determined that at 6:30 a.m. on March 30, 2011, the cell phone associated with            was located in the vicinity of Forsyth, Illinois, approximately two miles north of the Circle K, from which the anonymous 911 call to the Decatur Police Department was made. Subscriber information was obtained for            ), revealing that "Lloyd Cockywood" was listed as the current subscriber of the Boost Cellular phone number and that the number was active. Information obtained from the Bloomington Illinois Police Department showed that on April 27, 2011, Lloyd Lockwood of Lloyd's Affordable Automotive provided officers the phone number            as a contact number following an unrelated investigation.

11. Lockwood has prior felony convictions for unlawful restraint, aggravated arson, and possession of a controlled substance.

12. On November 8, 2011, SA Dart and I conducted an interview of Lockwood at his place of residence in Bloomington, Illinois. Lockwood initially denied knowing anything about either the pipe bomb being placed in Ferris Drive mailbox or the anonymous 911 call.

4

13. During the interview, I placed a call to                    . Lockwood's phone vibrated and he pulled it out of his pocket setting the phone on his lap. I advised Lockwood that I was the one that just called him, confirming his possession of the cell phone that was used to contact the Curtis phone number on the morning of March 30, 2011. SA Dart played a recording of the anonymous 911 call made to the Decatur Police Department from the unknown male. Lockwood confirmed that it was his voice and he had placed the call.

14. Lockwood admitting to knowing Curtis. He also stated that on March 29, 2011, Curtis approached him with an object wrapped in what appeared to be insulation and a plastic bag, asking him to place the object at the Ferris Drive residence in Decatur and to make the 911 call. Lockwood denied any knowledge of the contents of the bag, stating that he thought it might be marijuana but did not check to confirm his suspicions. When asked why he stated in the 911 call that there was "a bomb," Lockwood responded that he didn't know there was a bomb.

15. Lockwood agreed to participate in a consensual recording of a phone call he would make to Curtis. During the call, Lockwood asked Curtis if the object in the bag was a bomb, Curtis was silent and did not respond to the question. Towards the end of the conversation, Curtis discussed the exchange of money. Curtis also told Lockwood: "No more texting. No more anything. I don't know if they even actually get texts that are printed out." Additionally, Curtis told Lockwood that they should not communicate further on their cell phones but instead should "go back to" using

payphones or other forms of communication. After this call, I inquired of Lockwood if he had received any money from Curtis and he stated that he had not.

16. After interviewing Lockwood, SA Dart and I interviewed Curtis at her place of employment at the Bloomington Airport. Curtis reported knowing Lockwood. The interview was terminated when Curtis requested a lawyer.

17. Curtis was subsequently put on leave by TSA. In an apparent attempt to regain her position, Curtis sent a letter to TSA on December 13, 2011. Attached to her letter was an affidavit, purportedly from Lloyd Lockwood. In the affidavit, Lockwood denies many of the statements he made to myself and SA Dart.

## CONCLUSION

18. I submit that this affidavit supports probable cause for an arrest warrant for Lloyd B. Lockwood.

Respectfully submitted,
s/Adam M. Coffman

Adam M. Coffman
Special Agent, Federal Bureau of Investigation

Subscribed and sworn to before me
On *September 10, 2012*:
s/ David G. Bernthal

David G. Bernthal
UNITED STATES MAGISTRATE JUDGE