IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| LLOYD B. LOCKWOOD, ) | No. 12-cr-20070 |
| ) | |
| Defendant. ) | |

### DEFENDANT'S COMMENTARY ON SENTENCING FACTORS

**NOW COMES** Defendant, Lloyd B. Lockwood, by and through his attorney, Noll Law Office LLC, and for his Commentary on Sentencing Factors, submits to this Court the following objections, addendums, comments and briefs, pursuant to *Local Rule 32.1*: "Implementation of Sentencing Guidelines," and order of the Court:

### BACKGROUND

**Prefatory Comments –** The Defendant's commentary herein applies to the Revised Presentence Investigation Report dated on March 18, 2014. The sentencing hearing for the Defendant is scheduled for April 10, 2014, at 10:00 a.m., in the Urbana Division of the United States District Court for the Central District of Illinois, the Honorable Harold Baker, United States District Judge, presiding.

The purpose of this Sentencing Commentary is to assist the Court in determining an appropriate sentence for Lloyd Lockwood. In deciding upon a sentence, a court is to consider (1) "the nature and circumstances of the offense" and (2) "the history and characteristics of the offender." 18 U.S.C. § 3553(a)(1).

1

**Case Overview** – On September 10, 2012, a Criminal Complaint was filed in the Urbana, Illinois U. S. District Court charging that on or about March 30, 2011, the Defendant possessed an unregistered destructive device and possessed a firearm (pipe bomb) after a felony conviction, in Macon County, Illinois.

On October 4, 2012, a two-count indictment was filed in U.S. District Court, Urbana, Illinois.  Count I charged that on or about March 30, 2011, the Defendant knowingly possessed in Macon County, Illinois a destructive device, that is, a pipe bomb, not registered to him in the National Firearms Registration and Transfer Record.

Count 2 alleged that on or about March 30, 2011, the Defendant having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce, a firearm, that is, a pipe bomb, said firearm having been shipped and transported in interstate commerce.

On January 15, 2013, the government filed a motion to revoke Defendant's order of release, based upon law violations by the Defendant.  The Court issued a warrant for his arrest on the same date. On January 17, 2013, the Defendant appeared in Court. The Court allowed the government's motion and the Defendant was remanded to the custody of the U.S. Marshals Service. There are 2 felony cases outstanding against the Defendant in McLean County, Illinois.

The Defendant was found guilty on August 14, 2013 of Counts 1 and 2 of the Indictment after a jury trial.

**LEGAL PRINCIPLES AS TO SENTENCING**

Under 18 U.S.C. § 3553(a), a sentencing judge is to "impose a sentence sufficient, *but not greater than necessary* to comply with" the statutory purposes of federal sentencing. See 18 U.S.C. § 3553(a) (emphasis added). *Kimbrough v. United States*, 128 S.Ct. 558, 575 (2007) (referring to "§ 3553(a)'s overarching instruction"). Those purposes are (1) retribution, *id.* at (a)(2)(A); (2) deterrence, *id.* at (a)(2)(B); (3) incapacitation, *id*. at (a)(2)(C); and (4) rehabilitation, *id*. at (a)(2)(D). The statutory language "sufficient, but not greater than necessary" embodies the "parsimony" principle, *e.g., United States v. Scherrer*, 444 F.3d 91, 95 (1st Cir. 2006), which "insists that penalties should be no more severe than necessary." Alice Ristroph, *Desert, Democracy, and Sentence Reform*, 96 J. Crim. L. & Criminology 1293, 1336-37 (2006)

As a general rule, "no limitation shall be placed on the information concerning the [Defendant's] background, character, and conduct . . . which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Each of the four statutory purposes of sentencing poses a distinct question or set of questions, which we address below.

### 1. Retribution

The retributive purpose of sentencing asks the following question: What sentence does this offender deserve? *See, e.g., Furman v. Georgia*, 408 U.S. 238, 308 (1972) (Stewart, J., concurring) (retribution involves "impos[ing] upon criminal offenders the punishment they deserve.'"); Kent Greenwalt, *Punishment*, in *Encyclopedia of Crime and Justice* 336, 1338 (Sanford H. Kadish, ed., 1983) (retributivists "claim [t]hat punishment is justified because people deserve it"); Herbert L. Packer, *The Limits of the*

*Criminal Sanction* 10 (1968) (under the retributive justification "[t]he purpose of punishment is to inflict deserved suffering"). Retribution serves the societal "interest in seeing that the offender gets his 'just deserts.'" *Atkins v. Virginia*, 536 U.S. 304, 319 (2002).

The general question posed by the retributive rationale—what sentence does this offender deserve—requires consideration of two subsidiary questions. The first focuses on harm: What is the nature and extent of the harm that resulted from the offense? The second focuses on culpability: What is the nature and extent of the offender's culpability? A recent proposed draft of the Model Penal Code puts the retributive rationale this way: "punishment" should be "within a range of severity proportionate to the gravity of the offenses, the harms done to crime victims, and the blameworthiness of offenders." Model Penal Code § 1.02(2), Purposes; Principles of Construction (Preliminary Draft No. 3, 2004). *See also, e.g., Atkins*, 536 U.S. at 319 (for retributive purposes "the severity of the appropriate punishment necessarily depends on the culpability of the offender"); George P. Fletcher, *Rethinking Criminal Law* 461 (1978) (the retributive justification authorizes punishment commensurate with the offender's "wrongdoing…and culpability"); Stephen J. Schulhofer, *Harm and Punishment: A Critique of Emphasis on the Results of Conduct in the Criminal Law*, 122 U. Pa. L. Rev. 1497, 1601 (1974) (retribution provides for "punishment in accordance with moral fault"). *See generally* 18 U.S.C. § 3553(a)(1) (requiring that a sentencing court consider both "the nature and circumstances of the offense" and "the history and characteristics of the Defendant").

Thus, for purposes of retribution, punishment should be in proportion to the severity of the offense. That is, "[t]he graver the offense (on some kind of scale of moral outrage), the more severe the punishment." Herbert L. Packer, *supra*, at 14. Put another way, retribution requires consideration of the "external effect[s] [of the offender's behavior] upon the victim and the community." Jerome Hall, *General Principles of Criminal Law* 216-17 (2d ed. 1960). This "principle of proportionality—that punishments should be proportionate in severity with the seriousness of crimes"—is the "most important retributive constraint" on sentencing. Andrew von Hirsch, *Proportionality in the Philosophy of Punishment: From "Why Punish?" to "How Much?,"* 1 Criminal Law Forum 259, 262 (1990). Because "[p]unishment . . . imparts blame" under the retributive model, "it should be inflicted only to the degree that it is deserved." Andrew von Hirsch, *Doing Justice* 71 (1976). *See also, e.g.*, Richard A. Posner, *Retribution and Related Concepts of Punishment*, 9 J. Leg. Studies 71, 71 (1980) (under the "retributive concept" of punishment, "'[i]t is morally fitting that a person who does wrong should suffer in proportion to his guilt, and the severity of the appropriate punishment depends on the depravity of his act'") (quoting John Rawls, *Two Concept of Rules*, 1 Philosophical Rev. 3, 4-5 (1955)); K. G. Armstrong, *The Retributivist Hits Back*, in *The Philosophy of Punishment* 138, 154 (H. B. Acton ed., 1969) ("[A]ll that a retributive theory of penalty fixing needs to say to deserve the name is that there should be a proportion between the severity of the crime and the severity of the punishment.").

Unlike the questions raised by the other statutory purposes of punishment, which look forward in time and at the potential utility of punishment in achieving other social ends, the questions posed by the retributive rationale look backward in time. The

retributive rationale views punishment not as a means to an end, but as a proper end in itself—"a fitting social response to the commission of crime." George P. Fletcher, *supra*, at 415. *See also, e.g.,* Wayne R. LaFave & Austin W. Scott, *Criminal Law* § 1.5(a), at 26 (2d ed. 1986) (the retributive justification is based on the premise that "it is only fitting and just that one who has caused harm to others should himself suffer for it"). For purposes of retribution, punishment involves "payment of something undesirable . . . and the purpose of the payment is to settle the wrongdoer's moral account." William Kneale, *The Responsibility of Criminals*, in *The Philosophy of Punishment* 172, 177 (H. B. Acton ed., 1969).

### *2. Deterrence*

The deterrence rationale poses two questions. One relates to general deterrence, which is directed at society as a whole. *See, e.g, Bae v. Shalala*, 44 F.3d 489, 494 (7th Cir. 1994). The other relates to special (or specific) deterrence, which focuses on the individual offender. *See, e.g, id*. General deterrence is only indirectly related to the sentencing decision in any particular case. The heart of this rationale lies not in any particular sentence, but rather in the generally applicable "threat[s] of punishment" that are communicated by the criminal laws to potential offenders." Johannes Andenaes, *The Morality of Deterrence*, 37 U. Chi. L. Rev. 649, 649 (1970). *See also*, *e.g.*, H. L. A. Hart, *Punishment and Responsibility* 1 (1968) (the focus of general deterrence is "fear of the penalties threatened by the law"); Franklin E. Zimring & Gordon J. Hawkins, *Deterrence: The Legal Threat in Crime Control* 91 (1973) (the "central concept" of general deterrence "is that of a threat"). For purposes of general

deterrence, the function served by a particular sentence is simply to show that the law makes good on its deterrent threats. As Oliver Wendell Holmes put it:

> The law threatens certain pains if you do certain things, intending thereby to give you a new motive for not doing them. If you persist in doing them, it has to inflict the pains in order that its threats may continue to be believed.

Oliver Wendell Holmes, *The Common Law* 40 (1881; 1963 ed.). Thus, with respect to the sentencing decision that is to be made in a given case, general deterrence asks the following question: What sentence is appropriate in order to communicate to other potential offenders that the law makes good on its deterrent threats?

Because it is directed at the individual offender, special deterrence asks a different sort of question. For purposes of special deterrence, the question is this: What sentence is appropriate in order to inhibit this particular individual from committing further crimes? *See, e.g., Bae*, 44 F.3d at 494.

### *3. Incapacitation*

The incapacitation rationale for punishment poses the following question: What sentence is appropriate in order "to protect the public from further crimes" by this particular offender? 18 U.S.C. § 3553(a)(2)(C). The principle underlying this rationale is that "society may protect itself from persons deemed dangerous because of their past criminal conduct by isolating these persons from society." Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* § 1.5, at 23 (2d ed. 1986).

### *4. Rehabilitation*

Finally, the rehabilitation rationale asks the following question: What sentence will "provide the Defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner"? 18 U.S.C. §

3553(a)(2)(D). Under the federal sentencing scheme, this rationale focuses solely on non-incarcerative elements of a sentence. "[I]mprisonment is not," the statutory scheme makes clear, "an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). *See also, e.g.,* 29 U.S.C. 994(k) (addresses "the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the Defendant or providing the Defendant with needed education or vocational training, medical care, or other correctional treatment").

The difficulty, therefore, for any sentencing judge is fairly balancing the requirements of rehabilitation, incapacitation, deterrence and retribution such that the needs of society to protect itself, punish the offender, deter others, and revitalize the offender as a law-abiding citizen are met.

## SENTENCING HEARING CONSIDERATIONS

**Defendant's Burden** – Under the holding in *United States v. Coonce*, 961 F.2d 1268 (7th Cir. 1992), the Defendant acknowledges his burden to produce evidence when challenging the accuracy and completeness of the Presentence Investigation Report.

***Pro Se* Objections** – The Defendant has been advised that he may present objections, commentary and addendums, as are allowable under the *Rone* decision. See *United States v. Rone*, 743 F.2d 1169; 1984 U.S. App. LEXIS 18951 (7th Cir. 1984). The *Rone* case implements Federal Rules of Criminal Procedure 32(a) (1) (A), 32(c) (3) (A), and 32(c) (3) (D).

A sentencing court must ensure that a Defendant has had an opportunity to read the Revised Presentence Investigation Report and to confer with his attorney about it for a reasonable period of time before the sentencing hearing, and to comment adversely on its accuracy at the hearing. This allows a Defendant to present to the court any matters that a Defendant feels have not been fully presented by his defense attorney. Counsel for the Defendant welcomes any *pro se* pleadings and has included any such objections herein.

The Defendant has submitted to the Probation Office a series of *pro se* objections, which appear in the addendum to the Presentence Report. The Probation Officer has properly grouped these various objections for consideration by the Court. Those remain outstanding.

At the time of presenting this commentary, Defense Counsel has been advised that Mr. Lockwood may have additional *pro se* objections. Prior to the hearing, defense counsel will attempt to ascertain those additional objections, if any, and alert opposing counsel and the Probation Office of same.

**Mitigation Evidence** – There is a possibility that some of the Defendant's family and friends will attend the sentencing hearing. If that occurs, Defense Counsel intends to call no more than three (3) of those individuals to testify as to Defendant's positive character traits and reasons for the Court to mitigate any potential sentence.

**Right of Allocution –** The Defendant has been advised of his procedural right to allocution at the time of sentencing. It is anticipated that the Defendant will make a statement to the Court at that time. The Defendant will confirm that he could not be more remorseful about his conduct, and that he is sincerely apologetic to his family for

the pain and suffering to which he has subjected them due to this incident. At the same time, the Defendant reasserts his innocense as to the charges and conviction. His naivete and reliance on the direction of friends such as Susie Curtis caused this conviction to occur. The Defendant is not guilty of the charges and continues to maintain his innocense.

**Special Assessment** – A special assessment of $200 is mandatory pursuant to United States Code §3013(a)(2)(A).

**Objection as to Armed Career Criminal Status –** At paragraph 39 of the Revised Presentence Investigation, the Probation Office finds that the Defendant is subject to the enhancement as an armed career criminal. Defense counsel and the prosecution have actively explored this issue as it relates under the ruling in the case of *Buchmeier v. United States*.

The Armed Career Criminal statute requires a lengthy sentence for anyone who violates the charges for which the Defendant was found guilty. After three convictions for violent felonies for serious drug crimes, the armed career criminal statute is triggered.

*Buchmeier* makes several exceptions to this triggering. The Assistant U. S. Attorney along with defense counsel have inquired of the Illinois Department of Corrections as to whether or not the *Buchmeier* ruling and its underlying issues are present in this case. Late on Friday, April 4, 2014, a conference was held between the attorneys and it was determined that *Buchmeier* does apply. Thus, the Defendant is not eligible for the armed career criminal enhancement. Both the defense and the U. S.

Attorney's Office agree to that conclusion.  Therefore, the standard adjudication of sentencing guidelines apply for purposes of this sentencing hearing.

In any event, in the event that the Defendant is not eligible for the armed career criminal enhancement, then any objections by the defense counsel are moot.

**Calculation of Appropriate Guidelines** – Given that the Defendant is not subject to a Chapter 4 enhancement, the guideline calculations apply to his sentencing. Based upon the Probation Office's calculations, an adjusted offense level of 20 along with a criminal history category of I is appropriate.  Therefore, the Defendant's sentencing range for incarceration would be 33-41 months.  All other computations as to mandatory supervised release, restitution, fines and the like remain the same as set forth in the Revised Presentence Investigation report.

**Downward Departure/Deviation** – Defense counsel believes that a downward departure or downward deviation is warranted in this case. The Defendant's extensive cooperation with authorities included willingness to testify in any trial against Linda Sue Curtis, who is noted as the defendant in a related case (see page 2 of the Presentence Investigation in Case 13-cr-20042-001).

During the investigation the Defendant made phone calls to Ms. Curtis at the direction of law enforcement officers, which recorded communications are critical evidence in the case against Ms. Curtis.  The Defendant participated in proffer sessions and assisted the authorities substantially.

However, the Defendant did not plead guilty to the charges.  Thus, a downward department is not anticipated to be made in this case.  However, a substantial

downward deviation is warranted by this Court based upon the Defendant's cooperation.

**Fine and/or Restitution** – Given the Defendant's financial profile (see Paragraph 106 of the Revised Presentence Investigation Report) , a fine would not be appropriate.  Restitution is not an issue in this case.

**Defendant's Recommended Sentence** – Defense counsel believes that incarceration in this case should be minimized based upon the Defendant's lack of criminal culpability and cooperation with the authorities.  Given the elimination of the armed career criminal enhancement, the Defendant should be sentenced to a term of 33 months incarceration of less.  Time served would be the most appropriate sentence given the Defendant's cooperation with the authorities.

**Appeal Rights –** The Defendant will ask, at the conclusion of the sentencing hearing, that a notice of appeal be filed on his behalf in the case.

The Defendant has requested current defense counsel to file a motion to expedite the appeal.  Present defense counsel does not intend to prepare and present the Defendant's appeal to the Seventh Circuit Court of Appeals.  Thus, it is patently unfair for this counsel to file a motion expediting a case, which motion would not be warranted factually, especially in consideration of shortening deadlines for an attorney who is not familiar with the case, the issues at hand, and has not even communicated with the Defendant.  To file such a motion could potentially undermine appellate counsel and ultimately be detrimental to the Defendant.

**Remain in Central District of Illinois –** The Defendant is adamant about his desire and willingness to testify against Ms. Curtis in her pending case.  He requests

that the Court stay any actions to the Bureau of Prisons until such time as her case is finalized.  The Defendant fully realizes that he would have to continue to be incarcerated at the Macon County Jail. That is no problem to the Defendant, given his desire to insure that justice is done.

Therefore, the Defendant is asking the Court to stay any actions or entries of orders placing him into the custody of the Bureau of Prisons until such time as Ms. Curtis' case is completed.

**Place of Incarceration** – Defendant requests that he be incarcerated as close to Bloomington, Illinois as possible in order to allow him to have contact with his family.

### PRAYER FOR RELIEF

Defendant, Lloyd Lockwood, prays this Honorable Court to conduct a sentencing hearing and to sentence the Defendant to as low a sentence as is statutorily possible and for such other and further relief as this court deems just and equitable.

>Respectfully submitted,
>**LLOYD LOCKWOOD**, Defendant
>
>By:   /s Jon Gray Noll
>Jon Gray Noll
>Reg. No. 02060108
>**NOLL LAW OFFICE**
>930 East Monroe St.
>Springfield, IL  62701
>(217) 544-8441
>(217) 544-8775 (Fax)
>email: noll@noll-law.com

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 7, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

AUSA Jason M. Bohm

and I hereby certify that I have delivered the document via U.S. Mail to the following non CM/ECF participants.

Lloyd Lockwood
Macon County Jail
333 South Franklin
Decatur, IL 62523

Alexander Morris
U.S. Probation Office
201 S Vine St.
Urbana, IL 61802

Mary Kennedy
U.S. Probation Office
100 NE Monroe St.
Peoria, IL 61602

                By:   s/ Jon Gray Noll
                Jon Gray Noll
                Reg. No. 02060108
                **NOLL LAW OFFICE LLC**
                930 East Monroe Street
                Springfield, IL 62701
                217/544-8441