UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No. 12-CR-20070 |
| LLOYD B. LOCKWOOD, ) | |
| Defendant. ) | |

**UNITED STATES' SENTENCING COMMENTARY**

The United States of America by its attorneys, James A. Lewis, United States Attorney for the Central District of Illinois, and Jason M. Bohm, Assistant United States Attorney, files its sentencing commentary.

Background

In early 2011, the victims Robert and Melinda Grider were in the middle of a family dispute with Mr. Grider's sister, Linda Sue Curtis. On March 30, 2011, the defendant, at Curtis' request, put a pipe bomb in the mailbox of the Griders in an attempt to set up Mr. Grider. The defendant then called 911 and told the operator that Mr. Grider was planning to "blow his job up today, and he got the bomb." The bomb was discovered later that day.[1]

A Grand Jury charged the defendant with two counts: being in possession of an unregistered destructive device and being a felon in possession of a firearm, that is, a

---

[1] The United States anticipates the victims, Robert and Melinda Grider, will exercise their "right to be reasonably heard" at sentencing. 18 U.S.C. § 3771(a)(4).

pipe bomb.  The defendant was convicted of both counts following a jury trial.  He has now raised a number of *pro se* objections to the Presentence Investigation Report (PSR).  The PSR also found the defendant to be an Armed Career Criminal pursuant to 18 U.S.C. § 924(e).  The United States files this commentary to address the defendant's objections, the defendant's status as an Armed Career Criminal, and the sentencing factors in this case.

Response to the Defendant's Objection

Since his conviction the defendant has undertaken a deliberate course of action designed to obstruct the proceedings in this case.  While represented by counsel he has filed 14 *pro se* letters or motions with the Court. (R. 45, 50, 51, 58, 59, 60, 62, 64, 65, 67, 69, 70, 71, and 72)  In these filings he made various unsupported allegations, including that his trial counsel conspired to convict him and that he was drugged during the trial.  He continues this course of conduct now by making 87 *pro se* objections to the PSR.  The *pro se* objections were provided to the United States and the Probation Office by the defendant's counsel.

It is well established that the defendant does not have the right to "to serve as co-counsel in a 'hybrid'" form of representation. *United States v. Chavin*, 316 F.3d 666, 671 (7th Cir. 2002); *United States v. Patterson*, 576 F.3d 431, 436 (7th Cir. 2009).  This is especially true where a defendant "engages in serious and obstructionist misconduct." *Faretta v. California,* 422 U.S. 806, 835 n. 46 (1975).  Thus, this Court is "under no

obligation to consider [the] *pro se* objection[s] . . .because [the defendant is] represented." *United States v. Adcock*, 534 F.3d 635, 642 (7th Cir. 2008).

A review of the defendant's *pro se* objections further demonstrates their frivolous nature. His objections fall into a variety of specific categories. First, the defendant attacks his conviction and the facts introduced at trial supporting that conviction. For example, he claims he did not "knowingly possess the pipe bomb" and that he "believed that the call to 911 was nothing more than a joke." The jury rejected these notions when they found beyond a reasonable doubt that he knowingly possessed the pipe bomb. The PSR set forth the facts of the case consistent with the evidence admitted at trial and the jury's verdict.

Second, the defendant objects to the consequences of his conviction. For example, he claims supervised release and the guideline provisions "are irrelevant because [he] is not guilty of these offenses." Again, a jury convicted the defendant of the offenses and therefore the consequences of sentencing are far from "irrelevant."

Third, the defendant claims (inconsistent with the first two categories of his objections) that he has "cooperated with the authorities" and has accepted responsibility for his actions. While the defendant did place recorded calls with his coconspirator, he has never accepted responsibility for his conduct and continues to proclaim his innocence. The PSR correctly denied him any credit for acceptance of responsibility.

Fourth, the defendant objects to multiple paragraphs as "false," but he provided no specifics as to how the PSR information was inaccurate. It is insufficient to "rest on a general objection." *United States v. Hardamon*, 188 F.3d 843, 849 (7th Cir. 1999). The defendant has failed to provide any evidence or support for his claims. The PSR is based on the evidence admitted at trial, on reliable court documents, and arrest records. It is generally the "defendant's burden to show that the PSR is inaccurate or unreliable" and he must "do more than merely deny the facts in the report; instead, he must provide some evidence calling into question the accuracy or reliability of the information in the PSR." *United States v. Harmon*, 721 F.3d 877, 889 (7th Cir. 2013) (citation omitted). "[W]hen a defendant has failed to produce any evidence calling the report's accuracy into question, a district court may rely entirely on the PSR." *United States v. Taylor*, 72 F.3d 533, 547 (7th Cir. 1995).

Finally, the defendant raises immaterial objections such as whether his divorce was "tumultuous" and if he was a "good student" in high school. The Court need not rule on these type of objections if it determines that "a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed.R.Crim.P. 32(i)(3)(B).

## Armed Career Criminal

The defendant faces a mandatory minimum sentence of 15 years in prison if he has "three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). The PSR identified the defendant's previous convictions for reckless

use of a weapon, unlawful restraint, and aggravated arson as qualifying the defendant for this enhancement. (PSR ¶39)  The reckless use of a weapon conviction occurred in the State of Wisconsin.  (PSR ¶45)  Both the defendant's conviction for unlawful restraint and his aggravated arson conviction occurred in the State of Illinois. (PSR ¶¶48-49)

The Seventh Circuit has held that convictions "do not count for federal purposes" where the State of Illinois sent a certain notice regarding a defendant's restoration of rights. *Buchmeier v. United States*, 581 F.3d 561, 567 (7th Cir. 2009).  The notice is a "poorly written document" that appears to have been sent out to defendants who were sentenced to the Illinois Department of Corrections and who had their sentence discharged between March 1992 and March 2004. *Id.*  It does not matter whether a defendant "reads or understands the communication," only whether the State of Illinois sent the notice. *United States v. Burnett*, 641 F.3d 894, 896 (7th Cir. 2011).

In this case, the defendant was sentenced to 12 years in the Illinois Department of Corrections for his aggravated arson conviction. (PSR ¶49)  He was paroled on October 6, 1995, and his sentence was discharged on October 7, 1998. (PSR ¶49)  The United States has subpoenaed the Illinois Department of Corrections for any documents related to whether the same restoration of rights notice at issue in *Buchmeier* and *Burnett* was generated and sent out for the defendant's Illinois convictions.  Based on the undersigned counsel's conversations with the Department of Corrections, it is anticipated that notice was sent or provided to the defendant.  If this turns out to be the

case and the State of Illinois sent the notice, his aggravated arson conviction would not count for the recidivist enhancement pursuant to 18 U.S.C. § 921(a)(2) and the defendant would not face the mandatory 15 year minimum as an Armed Career Criminal. While the defendant may no longer technically qualify for the enhanced sentence, the reality of who he is remains unchanged.

## Sentencing Recommendation

Under *Buchmeier* and its progeny, the defendant's qualification as an Armed Career Criminal appears to be undermined. This does not undermine, however, the seriousness and severity of the offense nor the defendant's history and characteristics. Title 18, United States Code, Section 3553 requires this Court to consider those factors and others in determining the sentence that is sufficient but not greater than necessary. The United States believes that a sentence of 10 years is warranted.

    A.    *Nature and Circumstances of the Offense*

The offense in this case was perpetrated on the victims, Mr. and Mrs. Grider, because of a family dispute they had with Ms. Curtis. The defendant placed an explosive device in their mailbox without regard for the Griders or their wellbeing. Mrs. Grider discovered the pipe bomb when she retrieved the mail and Mr. Grider handled the device to determine what it was. While the device would not have immediately detonated without a power supply, it is undisputed that it was an explosive device.

This was not a "spur of the moment" crime, but one that was planned and calculated. The defendant acted deliberately when, on March 30, 2011, he drove early in the morning from Bloomington to Decatur, and placed the bomb in the Grider's mailbox. The defendant was clearly working in concert with Ms. Curtis as he did not know the Griders, had never met them, and had never been to their house. Only Ms. Curtis had that information. The plan was for the defendant to place the bomb in Mr. Grider's truck, however, that was thwarted because the truck was parked in the garage. Rather than break into the garage the defendant intentionally placed the device in the Grider's mailbox.

The defendant also intentionally masked his participation by making the anonymous 911 call from a payphone. Even after he was caught, the defendant has continually attempted to distance himself from his conduct and has never admitted that he knew he was placing a pipe bomb in the mailbox. Nor has he ever accepted responsibility for his conduct. Instead, he has only claimed that he thought the whole episode was a "joke." The defendant's conduct in this case is even more alarming when considered in light of his prior conduct.

  B.  *History and Characteristics of the Defendant*

The defendant is a violent person. As a juvenile, the defendant was twice arrested with a knife. Following his second juvenile arrest, he threatened to kill a female student at his high school, then "grabbed [her] by the hair and banged her head against a wall, and struck her in the face and chest with his fist." (PSR ¶44) He also

allegedly "los[t] his temper and attempt[ed] to throw a female youth worker off of a bridge" at the social service agency he was assigned to. (PSR ¶44)

The defendant's first adult conviction occurred after he conducted a drive-by shooting. When he was arrested, the defendant admitted that he fired two or three shots when he saw one of the "dudes he was after." (PSR ¶ 45) The defendant followed this conviction with two theft convictions. Then in 1988, the defendant was convicted of unlawful restraint after he forcibly restrained a woman in his car. The associated charge that the defendant raped the woman was dismissed when he pled guilty to the unlawful restraint. (PSR ¶48) Approximately 6 months after being paroled for this offense, the defendant committed an aggravated arson. In that case, he threatened to kill his former girlfriend and then lit a fire with gasoline at the entry way of her residence. (PSR ¶49) The defendant was sentenced to 12 years in prison for this offense.

In addition, to these convictions the defendant has been arrested on multiple other occasions (PSR ¶¶58-70, 73-76) He also has pending felony charges for a violation of a protective order (PSR ¶71) and an aggravated domestic battery. (PSR ¶72) Both of these incidents occurred while the defendant was on pretrial supervision for the instant offense.

Ordinarily the defendant's history would qualify him as an Armed Career Criminal. However, because of the legal technicality discussed above he does not qualify. The defendant's career of violent and dangerous offenses, however, remains clear. He has continually demonstrated a lack of regard for the law as well as the safety

of others. His violent history also reveals a strong need for the public to be protected from future crimes of the defendant. He is a habitually violent offender who is deserving of a sentence of 10 years in prison.

## Conclusion

The United States requests that the Court overrule the defendant's *pro se* objections to the PSR and sentence the defendant to 10 years in prison.

    Respectfully submitted,

    JAMES A. LEWIS
    UNITED STATES ATTORNEY

    /s/ Jason M. Bohm
    Assistant United States Attorney
    201 South Vine Street, Suite 226
    Urbana, Illinois 61802
    (217) 373-5875
    jason.bohm@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I hereby certify that on April 7, 2014, my office electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Jason M. Bohm